FILED
United States Court of Appeals
Tenth Circuit

September 19, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHRISTOPHER A. BROWN,

    Plaintiff - Appellant,

v.

LAFERRY'S LP GAS CO., INC.,

    Defendant - Appellee.

No. 17-7008
(D.C. No. 6:16-CV-00321-JHP)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HOLMES**, Circuit Judges.
_____

    Christopher A. Brown sued LaFerry's LP Gas Company, Inc. ("LaFerry's") for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2012). The district court dismissed Brown's complaint for failure to state a claim. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Mr. Brown alleges as follows in his Amended Complaint:

Mr. Brown was employed as a dockhand at LaFerry's Muskogee, Oklahoma location "[p]rior to and from January 1, 2015 to July 14, 2015." Aplt. App. at 4-5. His supervisor was Timothy Applegate. Mr. Brown was the only African-American at this location.

Between April and June of 2015, Mr. Applegate made three separate comments to Mr. Brown that Mr. Brown considered racially offensive. In late June Mr. Brown asked Mr. Applegate in private to refrain from making such racial comments, and Mr. Applegate agreed to do so. Sometime after this meeting LaFerry's employees stopped talking to Mr. Brown in the workplace.

On July 14, Mr. Brown "resigned" from his position because the "racially hostile environment made it impossible for [him] to continue working at LaFerry's." Aplt. App. at 6. Subsequently, a former co-worker informed Mr. Brown that Mr. Applegate had told LaFerry's employees at some point after Mr. Brown met with him that Mr. Brown had accused them and Mr. Applegate of being racist. Mr. Brown contends his co-workers stopped talking to him in his last two or three weeks on the job as a result of this false report by Mr. Applegate.

After obtaining a right-to-sue letter from the Equal Employment Opportunity Commission, Mr. Brown filed a first and then an amended complaint against LaFerry's claiming a hostile work environment, constructive discharge and retaliation in violation of Title VII. LaFerry's moved to dismiss Brown's amended

2

complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The district court granted LaFerry's motion, finding Mr. Brown had failed to plead sufficient facts to support his claims and that further amendment would be futile. This appeal followed.

## II

We review a dismissal for failure to state a claim under Rule 12(b)(6) de novo. *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). In our review of the operative complaint, we accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *Id.* We do not, however, accept conclusory allegations as true. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

On appeal, Mr. Brown argues the district court erred in holding that his amended complaint failed to state claims for a hostile work environment and constructive discharge.[1] We examine each claim in turn.

---

[1] Mr. Brown did not address the district court's dismissal of his retaliation claim in his briefing to this court. Consequently, he has forfeited appellate review of the district court's dismissal of this claim. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (stating "the omission of an issue in an opening brief generally forfeits appellate consideration of that issue"). Even if he had raised his retaliation

(continued)

3

A

To state a hostile work environment claim under Title VII, a plaintiff must,

among other things, plead facts sufficient to show that the work environment "is

permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment."[2] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)

(internal quotation marks and citations omitted); *see also Lounds v. Lincare, Inc.*,

812 F.3d 1208, 1222 (10th Cir. 2015). A plaintiff must allege facts showing that the

work environment "is both subjectively *and* objectively hostile or abusive" under this

standard. *Lounds*, 812 F.3d at 1222 (internal quotation marks and brackets omitted).

To meet the objective portion of this test, the alleged harassment must "be of the

character that it would be deemed hostile by a reasonable employee under the same or

similar circumstances." *Id.*

"[P]ervasiveness and severity are independent and equal grounds" upon which

a plaintiff may establish an objectively hostile or abusive work environment, though

these two grounds "are, to a certain degree, inversely related; a sufficiently severe

claim on appeal, the disposition of this appeal would be the same, because we agree
with the district court's grounds for dismissing this claim with prejudice. *See* District
Ct. Order, Aplt. App. at 43-44 (relying on *Johnson v. Weld Cty.*, 594 F.3d 1202
(10th Cir. 2010), to hold that Mr. Brown's claim that his co-workers gave him the
"cold shoulder" did not state a claim of retaliation as a matter of law).

    [2] The other elements necessary to state a prima facie case of race
discrimination under Title VII, *see Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222
(10th Cir. 2015), were not addressed by the district court and are not at issue in this
appeal.

4

episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (internal quotation marks and ellipses omitted); *see also Lounds*, 812 F.3d at 1223 (noting that "the workplace environment is likely to become more readily permeated by race-based ridicule, insult, and the like, insofar as the repeated harassing acts approach the level of severe"). We also consider the totality of the circumstances in determining whether a work environment is hostile or abusive, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *accord Lounds*, 812 F.3d at 1222.

Mr. Brown bases his hostile work environment claim primarily on three comments Mr. Applegate allegedly made to him during Mr. Brown's six or more months with LaFerry's. As reported by Mr. Brown, these comments were:

> On or about April or May of 2015, Timothy Applegate said the following to Mr. Brown: "Chris do you know why the inside of black people's hands are white, and the bottoms of their feet are white?" Mr. Brown, in shock and disbelief at the question, looked at Mr. Applegate but did not say anything in response. Noticing that Brown was looking toward him, Mr. Applegate then positioned himself toward a wall and placed his hands against the wall, as if he was getting arrested and frisked.

> On or about June 19, 2015, at approximately 7:55 a.m., Mr. Applegate said the following to Mr. Brown: "Hey Chris, Mr. Hayes (a co-worker) brought a leash and a collar to work today, you need to let him put the collar around your neck and walk you around with a leash at the Juneteenth Festival, when he goes to get the food. You know, like they used to do to slaves back in the day. I even got him a white hood to put on his head."

5

On or about April, May, or June 2015, Mr. Brown was having a conversation with a female co-worker, a secretary/receptionist, wherein he was telling her that his wife was desirous of having another child. Mr. Applegate, who was overhearing the conversation, interjected himself and told Mr. Brown to the effect the following: "Cool, you can just go get on welfare."

Aplt. App. at 5.

The district court discounted Mr. Applegate's final comment, finding it was racially neutral. Mr. Brown disputes this characterization, and argues further that even if the comment might be considered racially neutral, it still must be considered in assessing his hostile work environment claim. We agree that "facially neutral abusive conduct can support a finding of racial animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly racially-discriminatory conduct," and that such conduct therefore should be considered in evaluating a hostile work environment claim. *Lounds*, 812 F.3d at 1224 (internal quotation marks and brackets omitted). Even considering this final comment, however, we agree with the district court that Mr. Applegate's comments, while inappropriate and offensive, were not sufficiently pervasive or extreme to support a hostile work environment claim under Title VII.

It is well-established that a plaintiff cannot demonstrate pervasive harassment by pointing to "a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (internal quotation marks

6

omitted).  Mr. Brown's allegations regarding Mr. Applegate's verbal harassment fall

far short of this standard.[3]

As to the severity of Mr. Applegate's alleged misconduct, the Supreme Court

has "made it clear that conduct must be extreme to amount to a change in the terms

and conditions of employment," and that "isolated incidents (unless extremely

serious) will not amount to discriminatory changes in the terms and conditions of

employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal

quotation marks omitted).  Consistent with the Court's direction, in addressing the

sufficiency of evidence regarding severity in the work environment we have stated

that isolated incidents, such as Mr. Brown alleges here, are sufficient to support a

hostile work environment claim only when they are "threatening and severe" or

"especially egregious or extreme."  *Morris v. City of Colo. Springs*, 666 F.3d 654,

666-67 (10th Cir. 2012) (internal quotation marks omitted).  Most incidents found to

meet this standard involve some kind of physical assault.  *See id.* (summarizing

cases).  Mr. Brown makes no such allegation here against Mr. Applegate, and the

facts alleged by him otherwise "do not rise to the extreme level of conduct" required

---

[3] Mr. Brown's reliance on our decisions in *Lounds*, *Hernandez v. Valley View Hospital Ass'n*, 684 F.3d 950 (10th Cir. 2012), and *Asebedo v. Kansas State University*, 559 F. App'x 668 (10th Cir. 2014) (unpublished), to support his claim of pervasive racial discrimination is also misplaced.  Each of these cases involved many more incidents of racially offensive comments and conduct than Mr. Brown alleges in this case.  *See Lounds*, 812 F.3d at 1213-1219; *Hernandez*, 684 F.3d at 953-55; *Asebedo*, 559 F. App'x at 670-71.

7

for isolated incidents to give rise to a cognizable claim for a hostile work environment. *Id.* at 667-68.

Mr. Brown also cites Mr. Applegate's false report to LaFerry's employees that Mr. Brown had accused them of racism, and the "cold shoulder" or "silent treatment" that Mr. Brown received from his co-workers in response, as discriminatory conduct that supports his hostile work environment claim. Aplt. Br. at 9. In order to establish a race-based hostile work environment, however, the conduct that allegedly created that environment must be racial or motivated by racial animus. *See, e.g., Hernandez*, 684 F.3d at 960. Here, Mr. Brown asserts in his brief that Mr. Applegate misled Mr. Brown's co-workers "in retaliation" for Mr. Brown's complaint to him about his racist comments. Aplt. Br. at 9. If retaliation was Mr. Applegate's sole motivation for this conduct, then this retaliatory conduct does not support Mr. Brown's claim of racially motivated harassment. *See Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 476 (8th Cir. 2010) (distinguishing between retaliation and discrimination claims under Title VII and concluding that retaliatory shunning by co-workers following sexual harassment complaint did not constitute sexual harassment); *Cowan v. Prudential Ins. Co. of Am.*, 141 F.3d 751, 758 (7th Cir. 1998) (concluding "cold shoulder" from co-workers in retaliation for plaintiff's participation in grievance process did not constitute sexual harassment); *see also Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir. 2001) (explaining that retaliation for complaints of sexual harassment has "too remote a connection to gender to convert the retaliatory harassment into gender-based harassment" (internal

8

quotation omitted)). Nor does Mr. Brown allege that his co-workers were racially motivated when they stopped speaking to him in the two or three weeks before he resigned. Furthermore, even if we assume for purposes of analysis that Mr. Applegate's false report to Mr. Brown's co-workers or the cold shoulder Mr. Brown subsequently received from them were motivated by racial animus, we reach the same conclusion: This conduct is not enough to show, alone or in combination with Mr. Applegate's three alleged comments, that the environment at LaFerry's was "permeated with discriminatory intimidation, ridicule, and insult," *Harris*, 510 U.S. at 21 (internal quotations omitted), that was so severe or pervasive that a reasonable person would find it altered the conditions of Mr. Brown's employment and created an abusive working environment.

In sum, considering all of the circumstances alleged by Mr. Brown, and viewing them in the light most favorable to him, we agree with the district court that the racial harassment he alleges does not rise to the level necessary to state a hostile work environment claim under Title VII.

## B

Mr. Brown also asserts a constructive discharge claim based on the hostile work environment allegedly created by Mr. Applegate. In order to state a constructive discharge claim on this basis, the plaintiff must allege facts sufficient to show both that a hostile work environment existed and that this environment was "so intolerable that a reasonable person would have felt compelled to resign." *Penn. State Police v. Suders*, 542 U.S. 129, 146-47 (2004). Because Mr. Brown failed to

9

allege facts sufficient to establish a hostile work environment, he necessarily has failed to state a constructive discharge claim based on that environment. Accordingly, the district court properly dismissed this claim for failure to state a claim on which relief could be granted.

## III

For the reasons stated above, the district court's judgment is affirmed.

Entered for the Court


Jerome A. Holmes
Circuit Judge